UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SOUTHERN FARM BUREAU LIFE INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:13-CV-847 |
| HAZEL LUSK, *et al*, | § § § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court in this diversity-based Rule 22 interpleader action to determine the ownership of the proceeds of a $100,000 life insurance policy are Plaintiff Southern Farm Bureau Life Insurance's Request for Interpleader, seeking to deposit the proceeds of the Decedent's life insurance policy into the registry of the Court, recover its attorney's fees and costs, and be released and discharged from all liability in this matter (Doc. 1) and Defendant Hazel Lusk's Motion to Dismiss cross-claim of Defendants Robert and Ron Lehrmann (Doc. 21) and Motion to Take Judicial Notice of Facts (Doc. 40). Upon review and consideration of the motions, the factual and procedural history of the dispute, and the applicable law, the Court concludes that Plaintiff's request for interpleader is granted and Defendant Hazel Lusk's motion to dismiss and motion to take judicial notice are denied.

**I.     Background**

On June 29, 1989, Decedent Ann L. Lehrmann ("Mrs. Lehrmann") applied for a $100,000 face amount-Renewable Term Life Insurance Policy from Plaintiff Southern Farm Bureau Life Insurance Company. Policy, Doc. 1-1. Mrs. Lehrmann listed her sons, Robert and Ron Lehrmann (collectively, "the Lehrmann Bothers"), as the primary beneficiaries. *Id.* In

2009, the policy was converted into a $100,000 face amount-adjustable premium life insurance policy.  *Id.*  On June 11, 2012, just two weeks before her death from breast cancer, Mrs. Lehrmann submitted a Change of Beneficiary request naming her mother, Hazel Lusk (Mrs. Lusk), as the primary beneficiary.  Doc. 1-2.  On June 24, 2012, Mrs. Lehrmann died.  *See* Claimants' Statements, Docs. 1-3, 1-4, 1-5.  Robert Lehrmann, Ron Lehrmann, and Hazel Lusk each submitted a claim for the life insurance proceeds.  *Id.*  In order to settle the competing claims, Plaintiff Southern Farm Bureau filed its complaint and request for interpleader seeking to deposit the proceeds of the Decedent's life insurance policy into the registry of the Court, recover its attorney's fees and costs, and be released and discharged from all liability in this matter.  Pl.'s Compl. and Request for Interpleader (Doc. 1).

Mrs. Lusk filed an answer and asserted a counterclaim against Plaintiff for violation of Article 21.21 of the Texas Insurance Code (now codified at §§ 541.001 *et. seq.*), which prohibits unfair competition and unfair practices by insurance companies and subjects them to civil liability for violations.  Def. Lusk's Original Answer (Doc. 5).  Among those practices prohibited under section 541.001 is making a false statement of material fact about a policy.  *Id.* at § 541.061.  Mrs. Lusk alleges that Plaintiff has committed an unfair practice under this section by misrepresenting the fact that there are competing claims to the life insurance proceeds in order to deny or delay payment of the proceeds.  Doc. 5 ¶ 15.  She states that Plaintiff has not offered any evidence to support the validity of Robert and Rob Lehrmann's competing claims, and that Mrs. Lehrmann complied with all the prerequisites under the terms of her policy to change the beneficiary to Mrs. Lusk.  *Id.*  Mrs. Lusk also alleges that Plaintiff violated Article 21.21(4)(10)(a) (now codified at § 541.060(a)(4)(A)), which prohibits insurance companies from failing within a reasonable time to affirm or deny coverage of a claim to a policyholder.  *Id.*

Lastly, Mrs. Lusk asserts a claim for "abuse of process" for seeking to have the Court perform Plaintiff's duties under the policy and thereby avoid liability. *Id.*

Mrs. Lusk also asserted a cross-claim against co-defendants Robert and Ron Lehrmann. *Id.* ¶ 18. She alleges that they violated her constitutional, statutory rights and civil rights under 42 U.S.C. § 1983 by filing a "fraudulent, abuse of process lawsuit under Texas Probate Code section 682 seeking to be appointed guardian [to her person and estate]." *Id.* ¶ 18. She alleges that their claims to the life insurance proceeds are "but one of the parts of a plot to gain control of [her estate]."

Plaintiff answered Mrs. Lusk's counterclaim and requested that the Court dismiss the counterclaim, allow the interpleader of funds, and dismiss them for this suit. Interpleader Pl.'s Answer to Counterclaim (Doc. 12).

The Lehrmann Brothers answered Mrs. Lusk's cross-claim and asserted their own cross-claim against Mrs. Lusk. Def. Robert and Rob Lehrmann's Answer to Cross-cl. ¶¶ 5–18 (Doc. 19). The Lehrmann Brotherss aver that they are the lawful beneficiaries of the policy. *Id.* ¶ 16. They allege that the beneficiary change was not valid because Mrs. Lehrmann was not competent at the time she made the change. At the time she requested the change, Mrs. Lehrmann was near death from metastatic breast cancer that had spread to her brain as evidenced by her lack of balance, problems with vision and reading, and diminished cognitive ability. *Id.* ¶ 8. They claim that any change made near the time of her death could not have been, and was not, the result of conscious, rational decision making. *Id.* ¶ 9. Additionally, they allege, Mrs. Lusk's sister (and Mrs. Lusk's other daughter) LeEva Witt exerted undue influence over Mrs. Lehrmann to convince her to make Mrs. Lusk the beneficiary. *Id.* ¶¶ 8–11. They claim that when Mrs.

Lusk learned that she had been made the primary beneficiary instead of the Lehrmann Brothers, she became upset and disclaimed any interest in the life insurance proceeds. *Id.* ¶ 15.

The Lehrmann Brothers further allege that Mrs. Lusk, who is 93 years old, has been adjudicated incompetent in a guardianship proceeding, and in reality Mrs. Witt is pursuing this matter on behalf of Mrs. Lusk. *Id.* ¶ 17. They claim that prior to Mrs. Lehrmann's death, Mrs. Lusk's estate plan included a living trust and pour-over will that would have left Mrs. Lusk's estate to Mrs. Lehrmann, or to the Lerhmann Brothers if Mrs. Lehrmann predeceased Mrs. Lusk, and provided only a small bequest to Mrs. Witt. *Id.* ¶ 12. After Mrs. Lehrmann's death, Mrs. Witt took Mrs. Lusk from her home and moved her in with Mrs. Witt. *Id.* ¶ 14. Mrs. Witt arranged for Mrs. Lusk to revoke her living trust, and change her estate plan so that Mrs. Witt, and not the Lehrmann Brothers, would inherit her estate. *Id.*

Mrs. Lusk filed her motion to dismiss the Lehrmann Brothers' cross-claim on grounds that the cross-claim fails to state a proper claim, and the statements contained in the cross-claim are "false conclusions, without basis in fact or law." Mot. to Dismiss ¶¶ 5–6 (Doc. 21). The Lehrmann Brothers filed a response arguing that they had pleaded sufficient facts to state a plausible claim that their mother lacked legal capacity and was subject to undue influence when the alleged beneficiary change was made. Def. Lehrmanns' Resp. to Lusk's Mot. to Dismiss ¶ 9 (Doc. 34). Lusk filed a reply (Doc. 37).

## II.     Request for Interpleader

### A.     *Legal Standard*

Pursuant to Rule 22 of the Federal Rules of Civil Procedure, "persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." FED. R. CIV. P. 22. The gist of relief sought in an action for interpleader under Rule

22 is "the avoidance of the burden of unnecessary litigation or the risk of loss by the establishment of multiple liability when only a single obligation is owing." *Fulton v. Kaiser Steel Corp.*, 397 F.2d 580, 582 (1968) (citing *State of Texas v. State of Florida*, 306 U.S. 398, 412 (1939)). "These risks are avoided by adjudication in a single litigation binding on the parties." *Id.* Unlike a statutory interpleader action under 28 U.S.C. § 1335, a Rule 22 interpleader action does not require a deposit to establish jurisdiction. *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 391 F. Supp. 2d 541, 560 n.29 (S.D. Tex. 2005).

In *Rhoades v. Casey*, 196 F.3d 592, 600–01 (5th Cir. 1999), *cert. denied*, 531 U.S. 924 (2000), the Fifth Circuit indicated the procedure for the court to address an interpleader suit:

> A district court has broad powers in an interpleader action. An interpleader action typically involves two stages. In the first stage the district court decides whether the requirements for rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund. Wright, Miller & Kane, [F]ederal Practice & Procedure: Civil 2d § 1714 (1986). If the district court finds that the interpleader action has been properly brought the district court will then make a determination of the respective rights of the claimants. *Id.* When there is no genuine issue of material fact the second stage may be adjudicated at summary judgment, and if there is a trial each claimant must prove their right to the fund by a preponderance of the evidence. *Id.* After entering a judgment in the interpleader action the district court also has the power to make all appropriate orders to enforce its judgment.

*See also Gen. Elec. Capital Assurance v. Van Norman*, 209 F. Supp. 2d 668, 670 (S.D. Tex. 2002); 7 Charles Alan Wright, et al., Federal Practice & Procedure Civ. 3d § 1714 ("Interpleader is a remedy involving two steps…During the first the court determines the rights of the party invoking the remedy to compel the claimants to litigate their claims to the stake in one proceeding. It is at this point that the court determines whether the prerequisites to rule or statutory interpleader have been met by examining such things as the citizenship of the litigants, the merits of the asserted threat of multiple vexation, and, if interpleader is sought under the statute, the sufficiency of the stakeholder's deposit or bond…The second stage of interpleader

involves the determination of the respective rights of the claimants to the stake. At this juncture, each claimant occupies an adversary position to the other and must proceed accordingly.).

The party seeking interpleader has the burden of demonstrating that the action is proper. *Dunbar v. U.S.*, 502 F.2d 506, 508 (5th Cir. 1974). Rule 22 interpleader actions require complete diversity of citizenship.

### B.  Discussion

Plaintiff here has met its burden to show that there is complete diversity of citizenship and the amount in controversy exceeds $75,000. In addition, Plaintiff has demonstrated that there are three competing claims to a single fund, the proceeds of the life insurance policy at issue, thereby exposing it to double or multiple liability. Thus, the Court finds that the interpleader was properly and justifiably brought. As such, Plaintiff's request to dismiss Defendant Lusk's counterclaims for violations of the Texas Insurance Code and "abuse of process," which are based solely on Plaintiff's pursuit of this interpleader action, is granted.

Although Rule 22 does not require a deposit of funds into the Court's registry, the broad equitable powers of the Court in an interpleader action allow it to receive a deposit in accordance with Rule 67. *Chaucer Corp. Capital, No. 2 Ltd. v. Village Contractors, Inc.*, No. 09-2701, 2010 WL 3702609, at *8 (S.D. Tex. Sept. 15, 2010) (citing 7 Charles Alan Wright, et al., Federal Practice & Procedure Civ. 3d § 1716). Rule 67(a) provides as follows:

> If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party—on notice to every other party and by leave of court—may deposition with the court all or part of the money or thing, whether or not that party claims any of it. The depositing party must deliver to the clerk a copy of the order permitting the deposit.

FED. R. CIV. P. 67. Plaintiff requested that the Court allow it to deposit the funds into the Court's registry and dismiss it from the action. Doc. 12 ¶ 4. The Court finds that this action is warranted

and will order that the interpleaded funds in the amount of $100,000.00 be deposited into an interest bearing account in the registry of the Court and Plaintiff Southern Farm Bureau Life Insurance Company is dismissed.

### C. Attorney's Fees

Plaintiff also seeks to recover the attorney's fees and costs that it has incurred in litigating this matter. Doc. 1 ¶ 17. The Lehrmann Brothers have not expressed any opposition to this request. Doc. 24. Mrs. Lusk, on the other hand, opposes the request and argues that Plaintiff and the Lehrmann Brothers should be required to pay her fees and costs for having to defend the suit. Doc. 5 ¶ 14. "A district court has the authority to award reasonable attorney's fees in interpleader actions." *Rhoades*, 196 F.3d at 603. "The award of attorney's fees is in the discretion of the district court, and fees are available when the interpleader is a disinterested stakeholder, and is not in substantial controversy with one of the claimants." *Id.*

Mrs. Lusk opposes the request because she claims that Plaintiff is not a disinterested stakeholder and is in substantial controversy with her. Doc. 5 ¶ 14. Mrs. Lusk's claims are unfounded. She correctly points out that a court may deny a fee award if "the interpleader is not a mere stakeholder but has a substantial controversy with one of the claimants." *Phillips Petroleum Co. v. Hazlewood*, 534 F.2d 61, 63 (5th Cir. 1976) (affirming a trial court's denial of attorney fees when the interpleader "actively took a position opposing [one of the claimant's] claims and supporting the claims of [the other claimant]"). Mrs. Lusk, however, fails to demonstrate that there is any real controversy between her and Plaintiff. While she may view Plaintiff's request for interpleader as adverse to her interests, the factual and procedural history of this case show that Plaintiff is a disinterested stakeholder who is simply trying to ensure that the proceeds of the life insurance policy at issue are paid to the proper party. The Court finds

that Plaintiff is entitled to reasonable attorney's fees, which shall be paid from the policy proceeds in the Court's registry.

The fee award in an interpleader action is typically modest because "all that is necessary is the preparation of a petition, the deposit in the court or posting of bond, service on the claimants, and the preparation of an order discharging the stakeholder." 7 Charles Alan Wright, et al., Federal Practice & Procedure Civ. 3d § 1719. The Fifth Circuit has articulated specific factors for courts to consider in making awards of attorney's fees in certain types of cases (e.g., civil rights actions, ERISA actions). In interpleader actions, however, the Fifth Circuit requires only that the award be reasonable. *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 468 (5th Cir. 1971). Commentators suggest five factors relevant to awarding fees in an interpleader case: (1) whether the case is simple; (2) whether the stakeholder performed any unique services for the claimants or the court; (3) whether the stakeholder acted in good faith and with diligence; (4) whether the services rendered benefitted the stakeholder; and (5) whether the claimants improperly protracted the proceedings. 7 Charles Alan Wright, et al., Federal Practice & Procedure Civ. 3d § 1719. Because there is no specific request for fees and costs in the file, the Court orders that Plaintiff shall file within twenty (20) days a request for a specific amount with supporting documentation that the award is reasonable. Defendants shall have ten (10) days thereafter to file any objections.

I.  **Motion to Dismiss**

   *A.  Legal Standard*

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint, viewed in the light most favorable to the plaintiff, must be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation

marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining the reasonableness of such an inference is "a context-specific task that requires the … court to draw on its judicial experience and common sense." *Id.* at 679. While a court must accept all of the plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). If the facts fail to "nudge [the] claims across the line from conceivable to plausible, [then the] complaint must be dismissed." *Id.* at 570.

On a Rule 12(b)(6) review, the court may consider "documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citing *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017–18 (5th Cir. 1996)). Matters of public record that appear in the record of the case may also be considered. *See Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011). A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. FED. R. EVID. 201(b). Taking judicial notice of public records directly relevant to the issue in dispute is proper in a Rule 12(b)(6) review and does not transform the motion into one for summary judgment. *Funk*, 631 F.3d at 780.

### B. Discussion

Under Texas law, a request to change the beneficiary of a life insurance policy can be voided if the policyholder lacked capacity at the time the change was made or if the change was

the result of undue influence.[1]  *See Tomlinson v. Jones*, 677 S.W. 490 (Tex. 1984) (change of beneficiary of life insurance policies was a nullity where insured lacked capacity); *Cobb v. Justice*, 954 S.W.2d 162, 168 (Tex. App.—Waco 1997, pet. denied) (holding that former beneficiary may bring suit to contest a change of beneficiary on the basis that the change was accomplished as a result of undue influence exerted against the insured).  The law presumes that a person executing a contract or instrument had sufficient mental capacity at the time of its execution to understand his legal rights; therefore, the burden of proof rests on the person seeking to have the instrument set aside to show lack of mental capacity at the time of execution. *Decker v. Decker*, 192 S.W.3d 648, 652 (Tex. App.—Fort Worth 2006, no pet.).  "To demonstrate the state of the grantor's mental capacity at the time of the conveyance, evidence of his mental capacity prior and subsequent to the time of the conveyance is admissible. Additionally, the requisite proof regarding mental capacity is within the common knowledge and experience of laypersons and therefore, expert medical testimony is not required." *Id.* (internal quotation marks and citations omitted).

To show undue influence, a plaintiff must prove: "(1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the testament; and (3) the execution of a testament which the maker thereof would not have executed but for such influence." *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963).  Undue influence may be proved by circumstantial or direct evidence.  *Id.* "[T]he circumstances relied on as establishing the elements of undue influence must be of a reasonably satisfactory and convincing character, and they must not be equally consistent with the absence of the exercise of such influence." *Id.*  Establishing undue influence

---

[1] "An assertion that a person wrongfully changed a beneficiary designation form is a distinct legal claim arising from a set of circumstances separate from a challenge to a will." *In re Estate of Wallis*, No. 12-07-00022-CV, 2010 WL 1987514, at *3 (Tex. App.—Tyler May 19, 2010, no pet.).

generally requires an inquiry as to the nature and type of relationship existing between the testator, the contestants and the party accused of exerting such influence. *Id.* at 923. Factors relevant to such an inquiry include opportunities existing to exert undue influence, the circumstances surrounding the execution of the instrument, and the existence of a fraudulent motive. *Id.* "Weakness of mind and body, whether produced by infirmities of age or by disease or otherwise, may be considered as a material circumstance in establishing this element of undue influence." *Id.* Also, whether the testament executed is unnatural in terms of its disposition of property is also a relevant consideration. *Id.* (internal quotation marks and citations omitted).

The Lehrmann Brothers point to the following circumstances to support an inference of lack of capacity and/or undue influence: (1) the Lerhmann Brothers had been the beneficiaries of Mrs. Lehrmann's life insurance proceeds since the policy's inception in 1989; (2) approximately two weeks prior to her death in 2012, Mrs. Lehrmann changed the beneficiary designation to her 93-year old mother; (3) at the time of the change, Mrs. Lehrmann was near death from metastatic breast cancer; (4) her condition caused her to have diminished physical and cognitive abilities; (5) Mrs. Lehrmann was susceptible to undue influence; (6) Mrs. Lehrmann's sister, LeEva Witt, exerted undue influence upon her to change the beneficiary designation to Mrs. Lusk, who is also incompetent and susceptible to undue influence; and (7) following the death of Mrs. Lehrmann, Mrs. Witt moved Mrs. Lusk into her home and persuaded Mrs. Lusk to change her testamentary instruments to benefit Mrs. Witt rather than the previous designees, Mrs. Lehrmann's sons.

Additional circumstantial evidence supporting the Lehrmann Brothers' claims is contained in public documents that appear in the record. The Court takes judicial notice that on August 7, 2012 Ron Lehrmann filed Case No. 12-CPR-024866, an application for appointment of a temporary and permanent guardian of the person and estate of Hazel Lusk in the County

Court at Law, No. 3 in Fort Bend County, Texas, on grounds that Mrs. Lusk is not competent. Doc. 5-1 at 1–13.  The attachments to the application for appointment of a guardian include the affidavit of Ron Lehrmann, which contains factual allegations of fraud and undue influence on the part of LeEva Witt consistent with those stated in the Lehrmanns' cross-claims.  *Id.* at 10–13. In her answer to the Lehrmanns' cross-claims, Mrs. Lusk admits that the probate court appointed Catherine Wylie as a temporary guardian of Mrs. Lusk's estate and appointed Reba Eichelberger as a temporary guardian of Mrs. Lusk's person.  Lusk's Objections and Answer to Def. Lehrmanns' Answer ¶ 17 (Doc. 26).

The Lehrmann Brothers have indicated that many of the factors and circumstances relevant to the inquiry into whether a beneficiary change was the result of mental incapacity or undue influence are present and at issue in this case.  Accepting their allegations as true and viewing them in the light most favorable to the movants, the Court finds that the Lehrmann Brothers have stated a plausible claim for lack of capacity or undue influence.  Accordingly, Mrs. Lusk's motion to dismiss is denied.

## II.     Motion to Take Judicial Notice

Mrs. Lusk filed a motion (Doc. 40) asking the Court to take judicial notice of the following facts based on the "pleadings and papers on file in the case," including the "policies and procedures" contained in the life insurance policy at issue:

> (1) There is no denial the policy was in force on the date of Ann Lehrmann's death on June 24, 2012, subject to the terms and conditions of the policy. . . .
>
> (2) Plaintiff filed Southern's policy with Ann Lehrmann, Duplicate, No. xxxxxx8290U, Ann Lehrmann's Supplemental Application, and Ann Lerhmann's Change of Beneficiary Request naming Hazel C. Lusk as the sole and primary beneficiary.  No statement of proof that Ann Lehrmann did not have the right to change her beneficiary on June 11, 2013, or was incompetent. . . .

(3) Ann Lehrmann's supplemental application to change the policy was witnessed by J. Schroeder (sp?) agent for Southern. . . .

(4) Ann Lehrmann died on June 24, 2012. . . .

(5) On June 11, 2012, Ann Lehrmann executed the Change of Beneficiary, witnessed by J. Schroeder (sp?) and endorsed by Randy Johns, FLMI, ACS, Senior Vice President, Administration on June 18, 2012. . . .

(6) On June 11, 2012, Ann Lehrmann executed the Change of Beneficiary Request that Included [sic] the Southern provisions cited above [in the motion], witnessed by J. Schroeder (sp?) and endorsed by Randy Johns. No order or proof by Southern that it did not comply with the requested revocation. . . .

(7) The Texas Insurance Code, Chapter 542, Subchapter A, Unfair Claim Settlement Practices.

(8) Southern has not paid the claim and no interpleader action has not [sic] been properly filed because Southern has failed to tender the policy proceeds in the registry of the Court within 90 days of having received all items, statements, and forms required under Section 542.055. . . .

(9) Hazel C. Lusk is the only beneficiary with a one bona fide claim for the insurance proceeds held by Southern Farm Bureau Life Insurance Company. . . .

Doc 40, pp 1-8

Mrs. Lusk also made an earlier request that the Court take judicial notice of facts. In her motion to dismiss Defendants' cross-claims, Mrs. Lusk requested that the Court take judicial notice of "the court's file in this case, including Hazel C. Lusk's Answer, Counterclaim against Southern, and cross claim against the Lehrmanns." Doc. 21 ¶ 8. Mrs. Lusk's motion to take judicial notice of facts and the previous request to take judicial notice in her motion to dismiss reveal a general lack of understanding of this evidentiary rule.

As previously stated, judicial notice is authorized by Rule 201 of the Federal Rules of Evidence, which allows a court to recognize adjudicative facts that are "either (1) generally

known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b).  The facts of which Mrs. Lusk requests that the Court take judicial notice do not fall under either provision of the Rule.  With regard to her requests for the Court to take judicial notice of the pleadings that are on file in this case and of the Texas Insurance Code, courts are already aware of the pleadings that have been filed in a case and of the law and do not need to take judicial notice thereof.  With regard to her request that the court take judicial notice of facts regarding the life insurance policy at issue, the execution of the change of beneficiary request, and the rightful beneficiary under the terms of the policy, these are not things that are generally known in the Court's territorial jurisdiction; nor can they be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  To the contrary, many of these "facts" are contested issues in this case and not appropriate for judicial notice.  As such, Mrs. Lusk's motion to take judicial notice of facts is denied.

### III. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that the interpleaded funds in the amount of $100,000.00 be deposited into an interest bearing account in the registry of the Court.  It is further

**ORDERED** that Plaintiff Southern Farm Bureau Life Insurance Company is **DISMISSED**.  Plaintiff is entitled to reasonable attorney's fees and shall file within twenty (20) days a request for a specific amount with supporting documentation that the award is reasonable.  Defendants shall have ten (10) days thereafter to file any objections.  It is further

**ORDERED** that Defendant Hazel Lusk's Motion to Dismiss Cross-claim (Doc. 21) is **DENIED**.  It is further

**ORDERED** that Defendant Hazel Lusk's Motion to Take Judicial Notice of Facts (Doc. 40) is **DENIED**.

SIGNED at Houston, Texas, this 6th day of March, 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE